UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF BARNSTABLE, MASSACHUSETTS, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 24-cv-11886-ADB <br> * <br> * <br> * <br> * <br> * <br> * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

In this litigation, Plaintiff Conservation Law Foundation, Inc. ("CLF") seeks to curb nitrogen discharge from a wastewater treatment facility owned and operated by the Town of Barnstable ("Barnstable"). The operative complaint originally asserted 13 counts for violations of the federal Clean Water Act ("CWA"), alleging that Barnstable violated 33 U.S.C. § 1311(a) by discharging nitrogen into the Lewis Bay Watershed System without a federal National Pollutant Discharge Elimination System permit from the Environmental Protection Agency, [ECF No. 1]; the Court later dismissed 4 of those counts, but allowed the remaining 9 counts to proceed, [ECF No. 22]. Now CLF moves to amend its complaint to add four state-law counts under Mass. Gen. Laws ch. 214, § 7A against Barnstable. [ECF No. 50]. The new counts are premised on the allegation that the facility's nitrogen discharge causes or contributes to violations of the Massachusetts Surface Water Quality Standards and thus also violates the facility's state Individual Groundwater Discharge Permit ("IGDP"). [ECF No. 50-5 ¶¶ 432–54]. For the following reasons, CLF's motion is **GRANTED**.

1

I.      **LEGAL STANDARD**

Rule 15(a) permits a party to amend a pleading "with . . . the court's leave" and provides that leave to amend generally should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  Although this standard reflects "a liberal amendment policy," the Court "enjoys significant latitude in deciding whether to grant leave to amend." Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 60–61 (1st Cir. 2018) (quoting ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008)).  A court may deny leave based on "undue delay, bad faith or dilatory motive, . . . undue prejudice to the opposing party . . . [and] futility of amendment." ACA Fin. Guar. Corp., 512 F.3d at 56 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

II.     **DISCUSSION**

Barnstable argues that the Court should deny CLF's motion to amend because (a) the Court lacks, or should decline to exercise, supplemental jurisdiction over CLF's proposed state-law claims; (b) CLF's motion is unjustifiably delayed; and (c) CLF's proposed state-law claims are futile.  [ECF No. 56].

A.      **Supplemental Jurisdiction**

When a federal claim is pending before a federal district court, that court has supplemental jurisdiction "over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  State and federal claims are part of the same "case or controversy" if they "'derive from a common nucleus of operative fact' or 'are such that [they] . . . would ordinarily be expected to [be] tr[ied] . . . in one judicial proceeding.'" Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC, 730 F.3d 67, 72 (1st Cir. 2013) (quoting Penobscot Indian Nation v. Key Bank, 112 F.3d 538, 564 (1st Cir. 1997)); see also Cordeiro v.

GREP Atl., LLC, No. 23-cv-12901, 2025 WL 3527017, at *3 (D. Mass. Dec. 9, 2025) (finding common nucleus where "the evidence, discovery, and testimony necessary to prove the two claims [were] sufficiently overlapping"). Although the "common nucleus" standard is not without limit, see, e.g., Serrano-Moran v. Grau-Gaztambide, 195 F.3d 68, 70 (1st Cir. 1999) (holding that there was no supplemental jurisdiction where "[t]he facts and witnesses as to the two sets of claims [were] essentially different, not common"), it may be satisfied even when two sets of claims do not arise from the same "transaction or occurrence," Glob. NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 86, 88 (1st Cir. 2010); see also 13D Wright & Miller's Federal Practice & Procedure § 3567.1 (3d ed. 2025 update) ("In practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection.").[1] As relevant here, however, even if a claim falls within 28 U.S.C. § 1367(a)'s grant of supplemental jurisdiction, district courts may decline to exercise that jurisdiction if the claim "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1); see also Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("[A] federal court may be wise to forgo the exercise of supplemental jurisdiction when the state law that undergirds the nonfederal claim is of dubious scope and application.").

Barnstable argues that CLF's proposed state-law claims do not share a common nucleus of operative facts with the pending CWA claims, because the CWA claims "rely on the seven . . . factors" set forth in the Supreme Court's opinion in County of Maui v. Hawaii Wildlife Fund, 590 U.S. 165 (2020), which are relevant to determining whether a discharge of a pollutant

---

[1] The First Circuit has neither adopted nor explicitly rejected the "loose factual connection" test used by some other courts. See Glob. NAPs, Inc., 603 F.3d at 87 n.22.

is subject to regulation under the CWA,[2] whereas the state-law claims turn on whether the nitrogen discharge at issue causes or contributes to a violation of the Massachusetts Surface Water Quality Standards and causes environmental damage. [ECF No. 56 at 18–19]. CLF counters that its federal and proposed state-law claims are "co-extensive in time, source, and consequence" because they both "require[] the same proof about the nature, quantity, pathways, travel-time, potency and impacts of the [f]acility's nitrogen discharges into the Lewis Bay Watershed System." [ECF No. 59 at 2].

The Court finds that CLF's proposed state-law claims are sufficiently related to its CWA claims to form part of the same "case or controversy" for purposes of 28 U.S.C. § 1367(a). Both sets of claims arise from Barnstable's discharge of nitrogen into the Lewis Bay Watershed System, and courts commonly exercise supplemental jurisdiction over related state-law claims under similar circumstances. See, e.g., Centreville Citizens for Change v. City of Cahokia Heights, 640 F. Supp. 3d 831, 834–35, 839 (S.D. Ill. 2022) (exercising supplemental jurisdiction over state statutory and tort claims arising from alleged negligent maintenance of sewage system and alleged failure to maintain storm water infrastructure); Garrison v. New Fashion Pork LLP, No. 18-cv-03073, 2020 WL 1811373, at *1, 12 (N.D. Iowa Jan. 9, 2020) (exercising supplemental jurisdiction over claims alleging violations of state manure management plan requirements, state drainage laws, and state torts); Berna v. City of Detroit, 419 F. Supp. 2d 954, 955 (E.D. Mich. 2006) (finding requirements of supplemental jurisdiction satisfied where state

---

[2] Those factors are: "(1) transit time, (2) distance traveled, (3) the nature of the material through which the pollutant travels, (4) the extent to which the pollutant is diluted or chemically changed as it travels, (5) the amount of pollutant entering the navigable waters relative to the amount of the pollutant that leaves the point source, (6) the manner by or area in which the pollutant enters the navigable waters, [and] (7) the degree to which the pollution (at that point) has maintained its specific identity." 590 U.S. at 184–85.

claims arose from "the alleged production of noise and chemical emissions from the City's Wastewater Treatment Plant"); Mancuso v. Consol. Edison Co., No. 93-cv-00001, 1993 WL 525241, at *1 (S.D.N.Y. Dec. 13, 1993) (exercising supplemental jurisdiction over state nuisance claims in suit brought under CWA by marina owner alleging contamination of bay by utility company). Barnstable may be correct that the resolution of CLF's CWA claims will ultimately turn, in part, on different facts than that of its state-law claims, but that does not mean that the two sets of claims do not "derive from a common nucleus of operative fact," Allstate Interiors & Exteriors, Inc., 730 F.3d at 72 (emphasis added) (quoting Penobscot Indian Nation, 112 F.3d at 564), and, in any event, the factual overlap between the two sets of claims is sufficient to justify trying them in one judicial proceeding.

Nor will the Court exercise its discretion to decline to exercise supplemental jurisdiction over CLF's state-law claims based on the prudential concerns identified by Barnstable. See [ECF No. 56 at 20]. The law underlying CLF's state-law claims—that is, Mass. Gen. Laws ch. 214, § 7A, and the underlying state water quality regulations—is not of "dubious scope and application," Rodriguez, 57 F.3d at 1177. In 1979, a sister session of this Court considering whether to exercise "pendent jurisdiction" over a claim brought under the then-recently enacted Massachusetts Environmental Policy Act ("MEPA"), of which Mass. Gen. Laws ch. 214, § 7A is a part, noted that the claim involved "[m]any unsettled issues of state law" that had not yet been "answered in decisions of the state courts," and yet found that this factor "d[id] not weigh heavily in view of the availability of a procedure for certification of state-law questions." Roxse Homes, Inc. v. Adams, 83 F.R.D. 398, 405–06 (D. Mass. 1979). In the intervening years, a robust body of decisional law has developed, see Staci M. Rubin & Phelps T. Turner, Massachusetts Environmental Law § 4.2.2 (5th ed. 2025), and Barnstable's challenges to the

5

merits of CLF's state-law claims do not raise particularly "novel or complex" issues, 28 U.S.C. § 1367(c)(1). The same is true for Barnstable's concerns about "comity," which likewise appear to primarily attack the merits of CLF's claims and do not outweigh the efficiencies generated by trying the two sets of claims together. Nor does the Court believe that the doctrine of Burford abstention, see Burford v. Sun Oil Co., 319 U.S. 315 (1943), which applies only in "'unusual circumstances,' where the federal court risks usurping the state's role as the 'regulatory decision-making center,'" bars this Court from considering whether Barnstable's discharge of nitrogen violates Massachusetts law and regulations. Forty Six Hundred LLC v. Cadence Education, LLC, 15 F.4th 70, 75 (1st Cir. 2021) (quoting Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 474 (1st Cir. 2009)); see also Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd., 633 F.3d 20, 31–32 (1st Cir. 2011) ("While we are not prepared to rule out categorically the possibility of [Burford] abstention in a [Resource Conservation and Recovery Act] citizen suit, we believe that the circumstances justifying abstention will be exceedingly rare.").

  **B.** **Undue Delay**

Delay is "undue," so as to justify denying a motion to amend, only if it is "both substantial and unjustified." Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 37 (1st Cir. 2022). "Determining how long is too long depends on the facts and circumstances of each particular case." Id. A party's "reason . . . for seeking leave to amend must be a 'valid' one," but "[t]his is not a high hurdle, and the dispositive datum often will be the reasonableness of the pleader's actions." Id. "[E]ven if the reasons are valid, the court must consider whether and to what extent the opposing party would be unfairly prejudiced as a result of a delayed amendment." Id. at 37–38.

Here, CLF did not unduly delay in moving to amend. It filed its motion on November 28, 2025, [ECF No. 50], within the Court's scheduling order deadline, [ECF No. 42]. Santello v. Nw. Mut. Life Ins. Co., No. 17-cv-11383, 2018 WL 1913798, at *1 (D. Mass. Apr. 23, 2018) ("Plaintiff did not unduly delay the proceedings by moving to amend the complaint within the Court's scheduling order deadline."); Hilsinger Co. v. Kleen Concepts, LLC, 164 F. Supp. 3d 195, 199 (D. Mass. 2016) ("[Plaintiff] did not unduly delay the proceedings by moving to amend the complaint within the deadline set by the Court in its scheduling order."). But see Ryan v. Newark Grp., Inc., No. 22-cv-40089, 2024 WL 4815478, at *13–14 (D. Mass. Nov. 18, 2024) (finding undue delay where plaintiffs moved to amend within scheduling order deadline but the court, in issuing scheduling order, "did not anticipate that the parties would be seeking to join entities whose addition now would significantly delay litigation, inappropriately expand the scope of the case, and prejudice the proposed entities"), reconsideration denied, 349 F.R.D. 254 (D. Mass. 2025). Moreover, when CLF filed its motion, fact discovery had only just begun, see [ECF No. 42]; [ECF No. 59 at 8], and since then the parties have requested, [ECF Nos. 72, 73], and the Court has granted, [ECF No. 82], extensions of discovery deadlines, minimizing any prejudice to Barnstable, see [ECF No. 56 at 23].³ Thus, the Court concludes that CLF's delay in moving to amend was not "undue" and does not justify denying the motion to amend.

C.   Futility

A district court may deny leave to amend "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (quoting Bos. & Me. Corp. v. Hampton,

---

³ The Court also notes that Barnstable itself has raised as an affirmative defense—and thus can reasonably anticipate discovery related to—its compliance with its IDGP, which is implicated by CLF's proposed state-law claims. See [ECF No. 33 at 46].

7

987 F.2d 855, 868 (1st Cir. 1993)); see also Rife v. One W. Bank, F.S.B., 873 F.3d 17, 21 (1st Cir. 2017) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996))).  When analyzing whether a proposed amendment would be futile, district courts apply the pleading standards governing dismissal under Rule 12(b)(6). Amyndas Pharms., 48 F.4th at 40.  If a proposed amendment "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, and contains no other fatal defects, the district court abuses its discretion by denying the motion to amend on futility grounds." Id. (citation modified).

       To state a claim under Mass. Gen. Laws. ch. 214, § 7A, a group of at least "ten persons domiciled within the commonwealth" must plausibly allege that (1) "a person is causing or about to cause 'damage to the environment'" and (2) "the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment." Ten Persons of the Commonwealth v. Fellsway Dev. LLC, 951 N.E.2d 648, 656–57 (Mass. 2011) (quoting Mass. Gen. Laws ch. 214, § 7A); see also Miramar Park Ass'n, Inc. v. Town of Dennis, 105 N.E.3d 241, 243 (Mass. 2018) (noting that statute permits "a group of at least ten residents of the Commonwealth to file a complaint . . . when damage to the environment is occurring or is about to occur as a result of an action by, inter alia, a municipality, that is in 'violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment'" (quoting Bos. v. Mass. Port Auth., 308 N.E.2d 488, 493 (Mass. 1974))); Currence v. A.D. Makepeace Co., 269 N.E.3d 912, 918 (Mass. App. Ct. 2025) ("To prevail, the plaintiffs . . . must show (1) 'damage to the environment' (2) 'is occurring or is about to occur,'

(3) that the damage to the environment 'constitutes a violation of a statute, ordinance, by-law or regulation,' (4) that the 'major purpose' of the statute, ordinance, bylaw, or regulation so violated is 'to prevent or minimize danger to the environment,' and (5) that the defendant is the 'person causing or about to cause such damage.'" (quoting Mass. Gen. Laws. ch. 214, § 7A)), review denied, 2026 WL 190096 (Mass. 2026). "The statute defines 'damage to the environment' as 'any destruction, damage or impairment, actual or probable, to any of the natural resources of the [C]ommonwealth, whether caused by the defendant alone or by the defendant and others acting jointly or severally.'" Miramar Park Ass'n, 105 N.E.3d at 243–44 (quoting Mass. Gen. Laws ch. 214, § 7A).

Barnstable does not dispute that CLF's proposed amended complaint satisfies the statutory requirement that ten Massachusetts residents be joined as residents. See [ECF No. 56]; [ECF No. 62]. Barnstable does, however, argue that CLF has not plausibly alleged that the facility causes damage to the environment or that any such damage constitutes a violation of the Massachusetts Surface Water Quality Standards, [ECF No. 56 at 14–16]; it also suggests that CLF's state-law claims "are, in effect, a challenge to the [IGDP]," which authorizes nitrogen discharge subject to an annual nitrogen load limit, and that such a challenge to the IGDP is time-barred, [id. at 16–17]; see also Mass. Gen. Laws ch. 30A, § 14 (requiring that proceedings for judicial review of agency decisions, "except as otherwise provided by law, be commenced . . . within thirty days after receipt of notice of the final decision of the agency").

Here, the Court finds that CLF has sufficiently alleged that the facility causes damage to the environment. CLF alleges that the facility's nitrogen discharge contributes to elevated nitrogen levels and the "nitrogen crisis" in the Lewis Bed Watershed System. [ECF No. 50-5 ¶¶ 128–30, 149–65]. Based on these allegations, it is plausible that Barnstable is causing

"damage to the environment" under the statute's broad definition of that term, which includes "any destruction, damage or impairment, actual or probable, to any of the natural resources of the [C]ommonwealth, whether caused by the defendant alone or by the defendant and others acting jointly or severally."  Mass. Gen. Laws ch. 214, § 7A (emphasis added); see also Currence, 269 N.E.3d at 919 (noting statute's "broad" purpose (quoting City of Bos. v. Mass. Port Auth., 308 N.E.2d 488, 494 (Mass. 1974))).  Barnstable's insistence that the facility discharges less nitrogen than on-site septic systems, which might be used to treat wastewater in the facility's absence, and "account[s] for a fraction of the total nitrogen discharged to the Lewis Bay Watershed System," [ECF No. 56 at 15], does not change this conclusion.  The statute explicitly allows citizens to sue a town that causes any damage to the environment, regardless of whether the town's challenged conduct is less harmful than alternatives.  Mass. Gen. Laws ch. 214, § 7A.  And it provides a cause of action against a single defendant that causes damage to the environment even if the damage is "caused . . . by the defendant and others acting jointly or severally."  Id.  Thus, at least at this stage in the proceedings, CLF has plausibly alleged that the facility causes environmental damage for purposes of Mass. Gen. Laws ch. 214, § 7A.

CLF has also plausibly alleged that the facility's nitrogen discharge violates certain Massachusetts Surface Water Quality Standards, as well as a standard governing groundwater discharge permits.[4]  As relevant here, those standards provide that (1) surface waters "shall not exceed the site-specific criteria developed in a [Total Maximum Daily Load]," 314 Mass. Code Regs. 4.05(5)(c) (2022); (2) "existing uses [of surface waters] and the level of water quality necessary to protect the existing uses shall be maintained and protected," id. 4.04(1); see also id.

---

[4] Barnstable does not contest that a "major purpose" of the Massachusetts Surface Water Quality Standards or the groundwater discharge permit regulations is to "prevent or minimize danger to the environment," Mass. Gen. Laws ch. 214, § 7A.  See [ECF No. 56]; [ECF No. 62].

4.05(4)(a) (describing "Class SA" waters as "designated as an excellent habitat for fish, other aquatic life and wildlife");[5] (3) surface waters designated as "Class SA" "shall have excellent aesthetic value," id. 4.05(4)(a); and (4) "no discharge authorized in [a groundwater] permit shall impair the ability of the ground water to serve as an actual or potential source of potable water," id. 5.16(1) (2017).  See [ECF No. 50-5 ¶¶ 455–506].  CLF plausibly alleges that the damage caused by the facility separately violates these regulations.  See [id. ¶¶ 459–64, 475–77, 490–92, 501–03].  Accordingly, CLF has stated a claim under Mass. Gen. Laws ch. 214, § 7A.

Barnstable's argument that CLF's state-law claims represent a back-door, time-barred challenge to the IGDP, [ECF No. 56 at 11–13], is not without force, but the Court ultimately finds it unavailing at this stage in the litigation.  By regulation, ground water permits must contain effluent limitations that are adequate to protect ground and surface waters and to ensure compliance with the regulations discussed supra.  See 314 Mass. Code Regs. 5.10(3).  The IGDP here permits the facility to discharge up to 10 milligrams per liter and up to 49,315 pounds per year of nitrogen.  [ECF No. 56-1 at 5].  Thus, there is a certain plausibility to Barnstable's argument that the effluent limitations in the IGDP reflect Massachusetts's judgment, at least at the time of the IGDP's issuance, that a certain nitrogen discharge by the facility is consistent with the regulations that CLF now claims Barnstable is violating; and that CLF, which also alleges that the IGDP's limitations are insufficiently stringent, see, e.g., [ECF No. 50-5 ¶ 198], is actually challenging the issuance of the IGDP, rather than Barnstable's compliance with it.  [ECF No. 56 at 11].

---

[5] CLF alleges that the waters of the Lewis Bay Watershed System are designated as Class SA waters.  [ECF No. 50-5 ¶ 108].

Nevertheless, CLF has alleged that (1) Barnstable has violated the surface and ground water regulations, which, though they are referenced in the IGDP's effluent limitations, are also incorporated as independent conditions into the IGDP that apply separately and apart from those limitations (and separately and apart from the IGDP), [ECF No. 56-1 at 13]; (2) the IGDP's nitrogen discharge limitations were adopted to protect infants from methemoglobinemia, not to protect the integrity of surface waterbodies, [ECF No. 50-5 ¶¶ 196–97], such that it may be possible for the facility to comply with the IGDP's discharge limitations but still run afoul of the surface and ground water regulations; and (3) in any case, the facility has exceeded even the effluent limitations contained in the IGDP, [id. ¶ 201].  Thus, the Court is convinced that, based on the allegations in the proposed amended complaint, CLF's claims are ultimately "not limited to challenging the issuance of permits," but, rather, assert that the facility is "operating . . . beyond the scope of the issued permit[]," Currence, 269 N.E.3d at 922 (rejecting statute-of-limitations defense), including in ways that violate surface and ground water regulations.[6]  To be clear, the Court is not holding that Barnstable violated the IGDP or barring Barnstable from raising its compliance with the IGDP as an affirmative defense to CLF's state-law claims as this litigation progresses.  But the Court finds that CLF has sufficiently alleged that Barnstable violated the IGDP, as well as applicable regulations, and "the facts establishing [Barnstable's] defense" are not "clear on the face of [CLF's] pleadings." García-Gesualdo v.

---

[6] Friends & Fishers of Edgartown Great Pond, Inc. v. Department of Environmental Protection, 848 N.E.2d 393 (Mass. 2006), a case upon which Barnstable relies, [ECF No. 56 at 6, 12]; [ECF No. 62 at 2], is distinguishable.  Friends & Fishers involved a challenge to the issuance of a ground water permit, id. at 395–96, not a citizen suit under Mass. Gen. Laws ch. 214, § 7A alleging damage to the environment.  In fact, CLF explicitly disclaims any intent to challenge Massachusetts's permitting decision, [ECF No. 59 at 10], arguing that "[t]his case is about permit compliance, not permit issuance," [id. at 9]; at least in answering the original complaint, Barnstable appears to have accepted this framing, raising compliance with the IGDP as an affirmative defense, [ECF No. 33 at 46].

Honeywell Aerospace of P.R., Inc., 135 F.4th 10, 16 (1st Cir. 2025) (quoting Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019)).  Accordingly, because CLF's proposed amended complaint states claims for violations of Mass. Gen. Laws ch. 214, § 7A, permitting amendment would not be futile.

### III.	CONCLUSION

For the reasons stated above, CLF's motion to amend is **GRANTED**.

**SO ORDERED.**

February 19, 2026                                    */s/ Allison D. Burroughs*
                                                                      ALLISON D. BURROUGHS
                                                                      U.S. DISTRICT JUDGE